STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2022 CA 1225

PLANT-N-POWER SERVICES, INC.

VERSUS

JRE FIELD SERVICES, LLC, TEX DAVID SIMONEAUX, JR., AND
JRE INDUSTRIAL, LLC

JUDGMENT RENDERED: **MAY 3 1 2023**

* * * * * * *

Appealed from the Twenty-Third Judicial District Court
Parish of Ascension • State of Louisiana
Docket Number 131445 • Division B

The Honorable Cody M. Martin, Presiding Judge

* * * * * * *

| | |
|---|---|
| Phillip W. Preis | COUNSEL FOR APPELLANTS |
| Caroline P. Graham | DEFENDANTS—JRE Field Services, |
| Baton Rouge, Louisiana | LLC; JRE Industrial, LLC; and Tex |
| | David Simoneaux, Jr. |
| | |
| Barbara Lane Irwin | COUNSEL FOR APPELLEE |
| Timothy E. Pujol | PLAINTIFF—Plant-N-Power Services, |
| Gonzales, Louisiana | Inc. |

* * * * * * *

BEFORE: WELCH, PENZATO, AND LANIER, JJ.

**WELCH, J.**

Defendants appeal the trial court's judgment that granted Plaintiff's cross motion for partial summary judgment. For the following reasons, we maintain the appeal. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Plant-N-Power Services, Inc. ("Plant-N-Power"), provides industrial boiler maintenance and repair services in Texas, Louisiana, and other states along the Gulf Coast. Plant-N-Power's former president is Tex David Simoneaux, Jr., who was also an owner of Plant-N-Power's predecessor, Plant-N-Power, L.L.P.

### *The 2015 Agreement*

In December 2015, Mr. Simoneaux and the other owners of Plant-N-Power, L.L.P. sold their equity in Plant-N-Power, L.L.P. to Plant-N-Power.[1] As part of the sale, Mr. Simoneaux entered into an employment and non-competition agreement with Plant-N-Power, effective December 31, 2015 ("2015 Agreement"). The 2015 Agreement contained other restrictive covenants including non-disclosure, non-solicitation, and non-disparagement provisions. Mr. Simoneaux remained employed by Plant-N-Power, and eventually served as its president, until he resigned his employment on April 5, 2019.

Following his resignation, Plant-N-Power discovered that Mr. Simoneaux was working with one of its competitors, JRE Field Services, LLC ("JRE Field Services"), in violation of the 2015 Agreement. Plant-N-Power also averred that Mr. Simoneaux formed a staffing company, Ascension Staffing, LLC, to disguise his involvement with JRE Field Services. Plant-N-Power filed suit to enforce the 2015 Agreement in federal district court in Illinois.[2] Later, JRE Field Services filed suit

---

[1] Industrial Service Solutions, Inc. ("ISS") is the parent corporation of Plant-N-Power and a third-party beneficiary to the Settlement Agreement.

[2] Plant-N-Power alleged that Mr. Simoneaux breached the 2015 Agreement's non-competition covenant by secretly serving as an investor and manager of Plant-N-Power's direct competitor,

2

against Plant-N-Power in the Twenty-Third Judicial District Court ("23rd JDC") for the Parish of Ascension, State of Louisiana.[3]

### *The 2020 Settlement Agreement*

Thereafter, Plant-N-Power, Mr. Simoneaux, JRE Field Services, and Ascension Staffing entered into a Settlement Agreement, effective March 19, 2020, to settle the Illinois federal litigation and Louisiana state court litigation. The Settlement Agreement defined the "Simoneaux Parties" as Mr. Simoneaux, JRE Field Services, Ascension Staffing, and "any other person in which JRE Field Services, [Mr.] Simoneaux, or Ascension [Staffing] has a direct or indirect interest." The Settlement Agreement set forth that the parties' 2015 Agreement was "binding and enforceable." The Settlement Agreement further provided:

> [Mr.] Simoneaux violated the restrictive covenants contained in the Restrictive Covenant Agreements, including the non-compete, non-disclosure, non-solicitation, and non-disparagement provisions therein, through his involvement with JRE Field Services and Ascension Staffing both before and after his resignation from employment with [Plant-N-Power] on April 5, 2019[.]

The Simoneaux Parties agreed to pay $1.25 million to Plant-N-Power for release of its claims brought in the federal and Louisiana state court litigation.[4] In response to and for the purpose of funding the Settlement Agreement, Mr. Simoneaux formed JRE Industrial Services, LLC ("JRE Industrial") with John Evans and Rebecca Evans Mouk.[5]

---

JRE Field Services, while he was still employed by Plant-N-Power. See **Plant-N-Power Services, Inc. v. Simoneaux**, No. 1:19CV03268 (N.D. Ill. May 4, 2019).

[3] See **JRE Field Services, LLC v. Plant-N-Power Services, Inc.,** *et al.*, Docket No. 126887, Div. "E," 23rd JDC, Parish of Ascension, State of Louisiana.

[4] Defendants aver that this amount has been paid in full to Plant-N-Power.

[5] Mr. Simoneaux alleged that Luis Alvarado, Paola Alvarado, and Kerry Ponthier owned 40% of JRE Field Services and refused to relinquish their ownership in the company despite repeated requests during the Settlement Agreement negotiations. Their refusal necessitated the formation of JRE Industrial to fund the Settlement Agreement. We note that Mr. Simoneaux owns 49% of JRE Industrial.

3

The Simoneaux Parties further agreed to certain non-disclosure, non-competition, and non-solicitation covenants in the Settlement Agreement. Section 5(b) of the Settlement Agreement contained the non-competition covenant:

> For a period that runs for two (2) years from the Effective Date of the Agreement, the Simoneaux Parties shall not directly or indirectly, on their own behalf or the behalf of any third party...solicit, request, seek, obtain, or perform for the benefit of the Simoneaux Parties or any third party, boiler field services work for any [Plant-N-Power] Customer [as defined in the Agreement].... .

Exhibit D to the Settlement Agreement listed twenty-six customers that the Simoneaux Parties were prohibited from providing boiler field services work for within the defined geographic area of the twenty-three parishes listed in Exhibit E. Section 8(d) provided that the two-year period following the effective date of the Settlement Agreement "shall restart and run for the full period upon each breach by any of the Simoneaux Parties of the covenants" contained in Section 5(b). Section 5(e) provided for liquidated damages of at least $50,000.00 for each breach of the covenants contained in Section 5(b). Section 14 provided for costs and attorney's fees to a prevailing party in an action establishing a breach of the Settlement Agreement.

## Current Litigation

Approximately one year later, Plant-N-Power filed a petition for preliminary and permanent injunctive relief, liquidated damages, actual damages, declaratory judgment, and attorney's fees and costs against Defendants—Mr. Simoneaux, JRE Field Services, and JRE Industrial—on May 12, 2021. Plant-N-Power alleged that after the Settlement Agreement's March 19, 2020 effective date, Defendants engaged in conduct in breach thereof. Plant-N-Power contended that Defendants performed prohibited boiler field services work for at least ten of the twenty-six Plant-N-Power customers that Mr. Simoneaux, JRE Field Services, and Ascension Staffing were prohibited from providing boiler field services work for within the

4

defined geographic area of the twenty-three parishes listed in the Settlement Agreement.[6]

Defendants answered Plant-N-Power's petition and raised several affirmative defenses. Pertinent to the instant appeal, Defendants argued that JRE Industrial was not a party to the Settlement Agreement and could not be liable for any breach of the Settlement Agreement by the parties thereto, nor could JRE Industrial be liable for liquidated damages, loss profits, or attorney's fees. Defendants argued that the non-competition covenant contained in the Settlement Agreement did not comply with La. R.S. 23:921 and was null and void. Specifically, Defendants argued that the non-competition covenant extended two years beyond the date of termination of Mr. Simoneaux's employment, in violation of La. R.S. 23:921(C). Defendants contended that the last date that a non-competition agreement could be enforced against Mr. Simoneaux was April 5, 2021—*i.e.*, two years after he resigned from Plant-N-Power on April 5, 2019.

Mr. Simoneaux and JRE Industrial also filed a reconventional demand against Plant-N-Power. JRE Industrial alleged that Plant-N-Power violated Louisiana antitrust law, La. R.S. 51:122, *et seq.*, and Louisiana's Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.* ("LUTPA").[7] To the extent the trial court found it was a party to the Settlement Agreement, JRE Industrial sought attorney's fees as provided for in the Settlement Agreement. Against Plant-N-Power, Mr. Simoneaux alleged breach of contract, bad faith breach of contract, and sought attorney's fees under the Settlement Agreement. Mr. Simoneaux also requested to inspect Plant-N-Power's corporate documents as one of its shareholders.

---

[6] JRE Field Services admitted to performing boiler field services work for at least one of Plant-N-Power's customers in violation of the Settlement Agreement's non-competition covenant.

[7] JRE Industrial further alleged that Plant-N-Power is liable for the willful and intentional acts of its employee, Kodi J. Wiggins, through the doctrine of *respondeat superior*. However, the reconventional demand is not at issue in this appeal.

5

Defendants later filed a motion for partial summary judgment seeking the dismissal of Plant-N-Power's claims, with prejudice, and a judgment declaring: JRE Industrial is not a party to the Settlement Agreement; that if any Defendant is found to have violated the Settlement Agreement, Plant-N-Power is prohibited from seeking liquidated damages against that Defendant pursuant to La. R.S. 23:921(H), which allows for recovery of "damages for the loss sustained and the profit of which he has been deprived" for violations of non-competition agreements; and, that the Settlement Agreement's non-competition covenant may not extend beyond the two-year period set forth in La. R.S. 23:921(C). In support of its motion for partial summary judgment, Defendants attached the affidavit of Mr. Simoneaux; the affidavit of Ms. Mouk; the Settlement Agreement; and the 2015 Agreement.[8]

Plant-N-Power opposed Defendants' motion for partial summary judgment.[9] Plant-N-Power also filed a cross motion for partial summary judgment[10] and sought a judgment, finding: that La. R.S. 23:921, in its entirety, is not applicable to the Settlement Agreement; that JRE Industrial is included in the definition of the "Simoneaux Parties" and is therefore a party to and bound by the Settlement Agreement; that Plant-N-Power is entitled to seek liquidated damages under the terms of the Settlement Agreement; granting Plant-N-Power's cross motion for partial summary judgment and denying Defendants' motion for partial summary judgment; assessing all costs against Defendants; and for all other legal and equitable relief to which Plant-N-Power may be entitled. In support of its motion, Plant-N-Power attached its petition; Defendants' answer, affirmative defenses, and

---

[8] The Settlement Agreement and 2015 Agreement were attached to and authenticated by Mr. Simoneaux's affidavit.

[9] Defendants filed a reply to Plant-N-Power's opposition to their motion for partial summary judgment.

[10] Defendants opposed Plant-N-Power's cross motion for partial summary judgment. Plant-N-Power filed a reply to Defendants' opposition.

reconventional demands; and a motion to compel filed by Plant-N-Power on January 24, 2022.

Following a hearing on the two motions, the trial court took the matters under advisement. Thereafter, the trial court signed a judgment on June 6, 2022, which denied Defendants' motion for partial summary judgment and granted Plant-N-Power's cross-motion for partial summary judgment, holding: JRE Industrial was a party to the Settlement Agreement; La. R.S. 23:921 does not apply to the Settlement Agreement; and La. R.S. 23:921(H) does not apply to damages for any alleged breaches of the Settlement Agreement. The trial court issued written reasons for its judgment.

Defendants filed a motion to amend the June 6, 2022 judgment to certify that judgment as final under La. C.C.P. art. 1915(B)(1). In a judgment signed on August 15, 2022, the trial court granted Defendants' motion to amend the judgment. The trial court amended its June 6, 2022 judgment and designated that judgment as final under La. C.C.P. art. 1915(B)(1), giving reasons for its designation. Defendants now appeal[11] the portion of the trial court's June 6, 2022 judgment that granted Plant-N-Power's cross-motion for partial summary judgment.[12]

**APPELLATE JURISDICTION**

Under La. C.C.P. art. 1915(A)(3), the granting of a motion for summary judgment is a final, appealable judgment, except for a summary judgment rendered pursuant to La. C.C.P. art. 966(E), *i.e.*, "dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties." The June 6, 2022 grant of summary judgment in favor of Plant-N-Power is a partial summary judgment under La. C.C.P. art. 966(E) and falls squarely

---

[11] Defendants timely filed a motion for devolutive appeal on August 29, 2022. The trial court signed an order of appeal on August 31, 2022, notice of which was transmitted by the clerk of court to the parties on September 6, 2022.

[12] Defendants do not appeal the trial court's denial of their motion for partial summary judgment.

7

within the parameters of La. C.C.P. art. 1915(B). As required under La. C.C.P. art. 1915(B)(1), the trial court designated its June 6, 2022 partial summary judgment as final and gave reasons for its designation.

Although the trial court designated the partial summary judgment as a final one under La. C.C.P. art. 1915(B), that designation is not determinative of this Court's jurisdiction. **Van ex rel. White v. Davis**, 2000-0206 (La. App. 1st Cir. 2/16/01), 808 So.2d 478, 480. Thus, this Court's jurisdiction to decide this appeal hinges on whether the certification was appropriate. Because the trial court gave explicit reasons in certifying the appeal, we are to review the certification applying the abuse of discretion standard. **R.J. Messinger, Inc. v. Rosenblum**, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122.

Historically, our courts have had a policy against multiple appeals and piecemeal litigation. Louisiana Code of Civil Procedure article 1915 attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties. Thus, in considering whether a judgment is properly designated as final pursuant to La. C.C.P. art. 1915(B), a court must consider judicial administrative interests as well as the equities involved. **R.J. Messinger Inc.**, 894 So.2d at 1122. Factors to be considered by a trial court, although not exclusive, when determining whether a partial judgment should be certified as appealable include: 1) the relationship between the adjudicated and unadjudicated claims; 2) the possibility that the need for review might or might not be mooted by future developments in the trial court; 3) the possibility that the reviewing court might be obliged to consider the same issue a second time; and 4) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like. Nevertheless, the overriding inquiry for the trial court is whether there is no just reason for the delay. **R.J. Messinger, Inc.**, 894 So.2d at 1122-23.

Applying these precepts, we find no abuse of the trial court's discretion in certifying the partial summary judgment as a final judgment pursuant to La. C.C.P. art. 1915(B). Through its cross motion for partial summary judgment, Plant-N-Power sought a determination of whether the Settlement Agreement is governed by La. R.S. 23:921 and whether JRE Industrial was a party to the Settlement Agreement. Once these issues are decided, the merits of Plant-N-Power's claims will be resolved, with only the issue of damages and attorney's fees remaining. Future developments in the trial court in deciding damages, attorney's fees, or in deciding the merits of Defendants' reconventional demands would not moot this Court's decision on whether La. R.S. 23:921 applies to the Settlement Agreement and whether JRE Industrial was a party thereto, nor would this Court be obliged to consider those same issues a second time. A decision on these issues would prevent delays, shorten the time of trial, and considerably lower costs in the trial court. Applying these precepts, we find no abuse of the trial court's discretion in certifying the partial summary judgment as a final judgment under La. C.C.P. art. 1915(B). We maintain the appeal.

## SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial and secure the just, speedy, and inexpensive determination of every action, when there is no genuine issue of material fact. La. C.C.P. art. 966(A)(2); **Cypress Heights Academy v. CHA Investors, LLC**, 2021-0820 (La. App. 1st Cir. 6/7/22), 343 So.3d 736, 741, writs denied, 2022-01284, 2022-01247 (La. 11/8/22), 349 So.3d 574, 576. A motion for summary judgment is properly granted if, after an opportunity for adequate discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); **Cypress Heights Academy**, 343 So.3d at 741. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one

9

conclusion, there is no need for trial on that issue and summary judgment is appropriate. **Hebert v. Louisiana State University System Board of Supervisors through Louisiana State University**, 2022-0942 (La. App. 1st Cir. 2/24/23), ___ So.3d ___, ___ (2023 WL 2196479 at *2).

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

The legal issue before this Court is whether the Settlement Agreement is governed by La. R.S. 23:921, whether the non-competition covenant contained in the parties' Settlement Agreement is valid and enforceable, and whether JRE Industrial is a party to the Settlement Agreement. A party may seek a declaration on a legal issue through the summary judgment procedure. See **Cypress Heights Academy**, 343 So.3d at 742. In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **M/V Resources LLC v. Louisiana Hardwood Products LLC**, 2016-0758 (La. App. 1st Cir. 7/26/17), 225 So.3d 1104, 1109, writ denied, 2017-1748 (La. 12/5/17), 231 So.3d 624.

## LOUISIANA NON-COMPETITION AGREEMENTS

Parties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art. 1971. In a free enterprise system, parties

10

are free to contract, except for those instances where the government places restrictions for reasons of public policy. The state may legitimately restrict the parties' right to contract if the proposed bargain is found to contravene some matter of public policy. See Blake D. Morant, "Contracts Limiting Liability: A Paradox with Tacit Solutions," 69 TUL. L. REV. 715, 718 (1995).

Louisiana has long had a strong public policy disfavoring non-competition agreements. Thus, the longstanding public policy of Louisiana has been to prohibit or severely restrict such agreements. **SWAT 24 Shreveport Bossier, Inc. v. Bond**, 2000-1695 (La. 6/29/01), 808 So.2d 294, 298. The Legislature has expressed this public policy in La. R.S. 23:921(A)(1):

> **Every contract or agreement, or provision thereof,** by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable. [Emphasis added.]

Under La. R.S. 23:921(A)(1), *every* contract or agreement, or provision thereof, containing a non-competition agreement, covenant, or clause is null and void, unless such agreements meet certain exceptions as set forth in La. R.S. 23:921. Because non-competition agreements are in derogation of the common right, they must be strictly construed against the party seeking their enforcement. **Vartech Systems, Inc. v. Hayden**, 2005-2499 (La. App. 1ˢᵗ Cir. 12/20/06), 951 So.2d 247, 254.[13]

The statutory exceptions to La. R.S. 23:921(A)(1) include the sale of the goodwill of a business (La. R.S. 23:921(B)); the employer-employee relationship (La. R.S. 23:921(C) & (G)); the corporation-shareholder relationship (La. R.S.

---

[13] A non-competition agreement is a contract between the parties and should be construed according to the general rules of interpretation of contracts provided in La. C.C. arts. 2045-57. The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning. La. C.C. arts. 2045, 2047; **SWAT 24 Shreveport Bossier, Inc.**, 808 So.2d at 307. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. C.C. art. 2046.

11

23:921(B), (E), & (J)); the partnership-partner relationship (La. R.S. 23:921(E) & (K)); the franchise-franchisee relationship (La. R.S. 23:921(F)); and the limited liability company-individual member relationship (La. R.S. 23:921(L)). Louisiana Revised Statutes 23:921 defines the limited circumstances under which a non-competition clause may be valid in the context of each of these relationships. **Vartech Systems, Inc.,** 951 So.2d at 254-55.

The statutory exception at issue in the case before us is whether the employer-employee relationship, as provided for in La. R.S. 23:921(C), in pertinent part, is applicable to the non-competition covenant contained in the parties' Settlement Agreement:

> Any person, including a corporation and the individual shareholders of such corporation, **who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer** and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. [Emphasis added.]

Also at issue in the case before us is a limitation on the applicability of La. R.S. 23:921(A) that was enumerated by the Louisiana Supreme Court in **Louisiana Smoked Products, Inc. v. Savoie's Sausage & Food Products, Inc.,** 96-1716 (La. 7/1/97), 696 So.2d 1373, 1381, wherein the Supreme Court held that La. R.S. 23:921 does not apply to non-competition agreements made "between two corporations on equal footing."

**Louisiana Smoked Products, Inc.** involved non-competition agreements between two corporations that produced and distributed sausage. In 1988 and again in 1991, Louisiana Smoked Products, Inc. ("L.S.P.") contracted to market smoked alligator and venison sausages that were manufactured by Savoie's Sausage and Food Products, Inc. ("Savoie's"). **Louisiana Smoked Products, Inc.,** 696 So.2d at 1375. In exchange, L.S.P. agreed to process and purchase those products only

through or from Savoie's. **Id.** The contracts between the corporations contained a non-competition clause, which provided that the corporations would not compete against each other for three years after the agreements terminated. **Id.** In 1993, after the parties mutually terminated the contract, Savoie's continued to use L.S.P.'s recipes for the smoked alligator and venison sausages, manufacturing and selling it under its own label. **Id.** L.S.P. subsequently sued Savoie's to enforce the non-compete provisions of the agreement, alleging that Savoie's solicited L.S.P.'s customers and undercut L.S.P.'s prices. **Id.**

On appeal, the Supreme Court considered "whether the legislature intended to prohibit noncompetition clauses executed by two businesses with its enactment of the 1989 amendment to La. R.S. 23:921," which implemented the broad "every contract or agreement" language now found in La. R.S. 23:921(A). Stated another way, the Supreme Court was asked to decide "whether the prohibition of noncompetition agreements applies to contracts executed by two corporations on equal footing." **Id.** at 1379.

The Supreme Court found that the non-competition clause was a valid bargain between two corporations on equal footing and thus upheld the agreement, affirming the award of damages in favor of L.S.P. and against Savoie's. **Id.** at 1380-81. The Supreme Court reasoned that prohibiting two independent corporations from executing a non-competition clause would unduly infringe on the parties' freedom to contract. **Id.** at 1381. Furthermore, the Supreme Court reasoned that a non-competition clause will be deemed valid and enforceable when the corporations are on an equal footing, *i.e.*, (1) the non-competition clause was fair to each party in all respects: (a) no disparity in the corporations' bargaining power, (b) both parties were equally bound to the non-competition agreement, (c) neither party had control over the other, and (d) the non-competition was limited in duration; (2) both parties benefited from the contract; (3) the contract was prepared, reviewed, and approved by the objecting party's attorney; and (4) each party consented to the non-

13

competition clause and was equally bound to the terms therein. **Id.** at 1380. The Supreme Court ruled that "La. R.S. 23:921 is not intended to protect independent corporations on an equal footing from a bad bargain." **Id.** at 1381.[14]

## DISCUSSION

In its cross motion for summary judgment, Plant-N-Power argued that Louisiana's non-competition statute, La. R.S. 23:921, *in its entirety*, is not applicable to the Settlement Agreement. Plant-N-Power argued the Settlement Agreement was a compromise under La. C.C. art. 3071, *et seq.* which settled the parties' federal litigation and Louisiana state court litigation and was not an agreement incidental to employment. Plant-N-Power further argued that because La. R.S. 23:921 is inapplicable to the Settlement Agreement, the "restarted" two-year time period for the non-competition covenant provided for in Section 8(d) of the Settlement Agreement is valid.

---

[14] In 1989, the Legislature amended La. R.S. 23:921 to eliminate the requirement that an employer expend substantial sums in training or advertising in order to enter into a valid noncompetition agreement with an employee. See 1989 La. Acts No. 639, § Section 1 (eff. Aug. 1, 1989). The Legislature changed the statute to include more objective measures of an agreement's validity. **SWAT 24 Shreveport Bossier, Inc.**, 808 So.2d at 304. The new statute used language similar to that found in the current version of La. R.S. 23:921(A) and (C):

> A. Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade or business or any kind, except as provided in this Section shall be null and void.
> * * * *
> C. A person who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years.

**Id.** La. R.S. 23:921 was amended several times between 1989 and the present; however, none of these later amendments have any particular relevance to the instant issue. **Id.** at 304 n.8.

The facts in **Louisiana Smoked Products, Inc.** primarily dealt with a pre-1989 agreement. Consequently, all of the discussion in **Louisiana Smoked Products, Inc.** concerning corporations under amendments to La. R.S. 23:921 enacted in 1989 and thereafter would technically be dicta. However, the Supreme Court analyzed the legislative history of the 1989 amendments to La. R.S. 23:921 in great detail. It is presumptuous to conclude that the Supreme Court would choose to ignore its own carefully considered research and analysis if faced with a post-1989 non-competition contract between two or more corporations. **Times-Picayune Publishing Corp. v. New Orleans Publishing Group, Inc.**, 2000-0748 (La. App. 4th Cir. 3/20/02), 814 So.2d 34, 38, writ denied, 2002-1064 (La. 6/21/02), 819 So.2d 335.

## Assignment of Error No. 1

In their first assignment of error, Defendants argue the trial court erred as a matter of law when it determined that La. R.S. 23:921—and specifically, the two-year restriction provided for in La. R.S. 23:921(C)—was not applicable to the Settlement Agreement at issue. Defendants aver that the trial court erred by reasoning that the non-competition covenant in the Settlement Agreement must be interpreted in accordance with **Louisiana Smoked Products, Inc.**[15]

The trial court, in its reasons for granting Plant-N-Power's cross motion for summary judgment, stated that the trial court was tasked with determining "if a Settlement Agreement resulting from the resolution of a previously alleged breach of an underlying agreement[,] which was entered into through an employer/employee relationship[,] should be interpreted under the auspices of [La.] R.S. 23:921 or under the [**Louisiana Smoked Products, Inc.**] progeny of cases." The trial court found that this matter was "analogous to [**Louisiana Smoked Products, Inc.**]" in that "all of the parties to the Settlement Agreement had substantially equal bargaining power." The trial court further noted that at the time the parties entered into the Settlement Agreement, none had an employer-employee relationship; all parties were bound equally; the terms were "agreed to in detail and in writing between the parties;" all parties were "represented by legal counsel;" and all parties "reaped benefits from entering into the Settlement Agreement."

The non-competition agreement analyzed by the Supreme Court in **Louisiana Smoked Products, Inc.** was part of a contract between two corporations. In the case before us, however, the non-competition covenant is part of a contract between a corporation on one side and two companies and an individual on the other side. Based on the Supreme Court's discussion, **Louisiana Smoked Products, Inc.** would

---

[15] The issue, as set forth in Plant-N-Power's cross motion for summary judgment, is the *applicability* of La. R.S. 23:921 to the non-competition covenant contained in the Settlement Agreement. We note that the *validity and enforceability* of the non-competition covenant is a separate issue.

15

not invalidate the applicability of La. R.S. 23:921 as to any individual who was a party to the contract. See, e.g., **Security Alarm Financing Enterprises, Inc. v. Green**, No. CIV. A. 05-0911 (W.D. La. July 21, 2008) (2008 WL 2812959 at *7) (unpublished);[16] **S. E. Auto Dealers Rental Association, Inc. v. EZ Rent To Own, Inc.**, 2007-0599 (La. App. 4th Cir. 2/27/08), 980 So.2d 89, 98, writ denied, 2008-0684 (La. 4/18/08), 978 So.2d 355;[17] **Communication & Technology Industries, Inc. v. Global Hunter Securities, Inc.**, 2012-861 (La. App. 5th Cir. 5/16/13), 116 So.3d 917, 921.[18] Accordingly, we must tailor our analysis of the applicability of La.

---

[16] SAFE, a corporation that sells, installs, and monitors residential security systems entered into a contract with CCI, a corporation that provides security services. The contract included several restrictive covenants, including non-solicitation and non-competition provisions. Jayne Green signed the contract on behalf of CCI, and a vice-president from SAFE signed the contract. **Id.** at *1. SAFE later filed suit against Mrs. Green, alleging that she, as an officer and shareholder of CCI, violated the contract's non-solicitation provision. Mrs. Green filed a motion for summary judgment arguing that the non-solicitation provision was unenforceable under La. R.S. 23:921. The federal district court granted Mrs. Green's motion; however, the Fifth Circuit reversed, applying the analysis of **Louisiana Smoked Products, Inc.**, finding that La. R.S. 23:921 does not apply to the contract if SAFE and CCI were companies on equal footing. **Id.** at *2.

After the Fifth Circuit's decision, SAFE amended its complaint, and the case was consolidated with two related cases. The first was an action by SAFE against Central Security (the company started by Mrs. Green's son), Chad Burford (the son of Mrs. Green and principal of Central Security), and Robert Green (a former principal of CCI, husband of Mrs. Green, and step-father to Mr. Burford). The second case was an action originally brought in bankruptcy court by Mark Sutton, Trustee, on behalf of Central Cellular against Mrs. Green, Central Security, and Mr. Burford. The consolidated defendants moved for summary judgment on all claims. **Id.**

In analyzing the enforcement of the non-competition provision as to Mrs. Green, Mr. Burford, and Mr. Green, the **Security Alarm** court declared that when a non-compete agreement is part of a contract between a company on one side and a company and individuals on the other, **Louisiana Smoked Products, Inc.** does not invalidate La. R.S. 23:921 as it applies **to the individuals. Id.** at *7. However, the court noted that neither Mrs. Green, Mr. Green, nor Mr. Burford were parties to the contract in their individual capacities; furthermore, none of the pending causes of action sought damages against the individuals under a contract theory of recovery. The court dismissed consolidated plaintiffs' contract claims against the individuals, to the extent any contract claims were asserted. **Id.**

[17] S. E. Auto Dealers Rental Association, Inc. ("SEADRA"), an association of rent-to-own automobile dealers, filed a petition for damages and injunctive relief against EZ Rent To Own, Inc. ("EZ Rent"), a rent-to-own automobile dealer, after EZ Rent ceased making payments to SEADRA under the parties' commercial license agreement. The Fourth Circuit held that La. R.S. 23:921's prohibition against non-competition agreements did not apply to invalidate the non-competition provision in the commercial license agreement between SEADRA and EZ Rent because the agreement and non-competition provision were fair to each party; the parties did not have an employer-employee relationship; there was no disparity in bargaining power between the parties; both parties derived monetary benefits from the agreement; the provision was reasonably limited in duration to a two-year period and geographically limited; and it was not necessary for the parties to perform identical tasks in order to enforce the provision. **Id.** at 96-97.

[18] The Fifth Circuit held that a non-solicitation provision of a Master Services Agreement that entitled an I.T. services provider (Communication and Technology Industries, Inc., "Commtech") to payment if its client (Global Hunter Securities, LLC) hired Commtech's employee was valid and enforceable against Global. Global hired Commtech's former employee as an I.T. technician.

16

R.S. 23:921 to the Settlement Agreement as it applies to Mr. Simoneaux, an individual, versus JRE Field Services and Ascension Staffing, two companies.

## Mr. Simoneaux

In reviewing Plant-N-Power's claims against Mr. Simoneaux, we need look no further than the plain language of the statute to decide whether La. R.S. 23:921 is applicable to Mr. Simoneaux's non-competition covenant with Plant-N-Power. Section 5(b) of the Settlement Agreement contains the non-competition covenant that restrains Mr. Simoneaux from performing boiler field services work for the twenty-six Plant-N-Power customers specifically listed in Exhibit D to the Settlement Agreement, within the defined geographic area of the twenty-three parishes listed in Exhibit E. There is no dispute that Section 5(b) is a non-competition covenant contained in the parties' Settlement Agreement. Thus, under the plain language of La. R.S. 23:921(A)(1), the Settlement Agreement *is* a "contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind." We therefore find that La. R.S. 23:921 is applicable to the Settlement Agreement as to Mr. Simoneaux.

Pursuant to La. R.S. 23:921(A)(1), the non-competition covenant contained in Section 5(b) of the Settlement Agreement is null and void, unless it falls under one of the exceptions to the general prohibition on non-competition agreements. In the instant case, the question then becomes whether the non-competition covenant falls under the employer-employee exception and complies with the provisions of La. R.S. 23:921(C): 1) a two-year maximum duration; 2) a specific list of areas in which the former employee is restrained from competing with the employer's business; and 3) competition between the former employee and employer.

The Fifth Circuit held that the employee was not prevented from exercising his trade, profession, or business, and, thus, La. R.S. 23:921 was inapplicable. Citing **Louisiana Smoked Products, Inc.**, the Fifth Circuit reasoned: "Commtech and Global are two businesses that chose to enter into an agreement, and La. R.S. 23:921 is not intended to protect independent corporations on an equal footing from a possibly bad bargain" **Id.** at 921.

There is no dispute that at the time Mr. Simoneaux and Plant-N-Power signed the Settlement Agreement on March 19, 2020, Mr. Simoneaux was not employed by Plant-N-Power. Mr. Simoneaux resigned from Plant-N-Power on April 5, 2019. There was no employer-employee relationship between Mr. Simoneaux and Plant-N-Power at the time the parties entered into the Settlement Agreement. Louisiana Revised Statutes 23:921(C) applies to "any person ... **who is employed** as an agent, servant, or employee" who agrees "**with his employer** to refrain from carrying on or engaging in a business similar to that of the employer...." (Emphasis added). Based on the plain language of La. R.S. 23:921(C), the employer-employee exception applies to current employers and employees, not former employers and employees.[19] Thus, the non-competition covenant contained in the Settlement Agreement is not valid and enforceable as one of the exceptions to La. R.S. 23:921(A)(1)'s prohibition on non-competition agreements.

As provided for in the severability clause found Section 18 of the Settlement Agreement, the parties may excise the offending language without doing undue damage to the remainder of the Settlement Agreement. See **SWAT 24 Shreveport Bossier, Inc.**, 808 So.2d at 308-09 (a severability clause makes it possible to excise offending language from a non-competition clause in an agreement without doing undue damage to the remainder of the agreement).

For these reasons, we find that the trial court erred, in part, in granting partial summary judgment in favor of Plant-N-Power and finding that La. R.S. 23:921 does not apply to the Settlement Agreement as to Mr. Simoneaux.

---

[19] See **Setpoint Integrated Solutions, Inc. v. Kiteley**, 2021-322 (La. App. 3rd Cir. 1/26/22), __ So.3d __, (2022 WL 225093), writ denied, 2022-00632 (La. 6/22/22), 339 So.3d 639, where the Third Circuit found that a non-competition agreement included in the parties' Separation Agreement was not enforceable because the employment terminated before the agreement was executed: "The Separation Agreement, and by extension the non-competition agreement, was entered into to resolve issues related to a severance payment, waiver of rights, and an extension of the earlier non-competition agreement that had expired." **Id.** at __, 2022 WL 225093 at *8. The Separation Agreement included a general release of any claims or causes of action the employee had or may have had against his former employer—in exchange for separation pay—and thus, had elements of a compromise.

18

### *JRE Field Services and Ascension Staffing*

To determine whether JRE Field Services and Ascension Staffing's non-competition covenant with Plant-N-Power falls under the limitation on the applicability of La. R.S. 23:921(A) set forth by the Louisiana Supreme Court in **Louisiana Smoked Products, Inc.**, we must determine whether JRE Field Services, Ascension Staffing, and Plant-N-Power are companies that are "on equal footing" based on the factors listed in **Louisiana Smoked Products, Inc.**, 696 So.2d at 1380.

### *Fairness*

The record shows that the Settlement Agreement is fair to all parties. First, there is no evidence to show disparity in the parties' bargaining power. The record shows that JRE Field Services, Ascension Staffing, and Plant-N-Power are sophisticated juridical persons whose officers have considerable experience in boiler field services work. The record shows that JRE Field Services was owned by Mr. Simoneaux, Ms. Mouk, in addition to at least three others.[20] Ascension Staffing is member-managed by Mr. Simoneaux. In her affidavit, Ms. Mouk attested that she and her family have been involved in the fabrication of parts for boiler repairs in Louisiana since 2008, and have been in business in Ascension Parish for over sixty years. In his affidavit, Mr. Simoneaux attested that he has over twenty-five years' experience in boiler field services work. Mr. Simoneaux became an expert in boiler repair in 2015, and was a key employee of Plant-N-Power, served as its president, and had obtained considerable ability, expertise, and marketing skills. In his reconventional demand, Mr. Simoneaux allged that after its sale in 2015, Plant-N-Power retained him as an employee "because of his expertise in boiler repairs and his relationships with the customers." Mr. Simoneaux further claimed that Plant-N-Power "was solely reliant" upon his expertise.

---

[20] See FN 5, *supra*.

Second, the parties were equally bound to the Settlement Agreement and non-competition covenant. Third, none of the parties had control over the others—Plant-N-Power was a wholly separate company with no shared ownership or operational control over JRE Field Services or Ascension Staffing. Further, none of the parties had an employer-employee relationship at the time the Settlement Agreement was executed. Finally, the prohibition of directly competing with the others' business activity was reasonably limited in duration to two years after the effective date of the Settlement Agreement, barring breach of the Settlement Agreement. As to the two-year "tolling" provision found in Section 8(d), that provision was solely dependent upon and within the control of JRE Field Services and Ascension Staffing, and cannot affect the fairness of the Settlement Agreement since the parties have the freedom to contract and mutually agreed to include the two-year "tolling" provision found in Section 8(d).

### *Benefits*

The record shows that the Settlement Agreement, by its very terms, benefitted JRE Field Services, Ascension Staffing, and Plant-N-Power. JRE Field Services and Ascension Staffing received a release of the claims brought against them by Plant-N-Power in Illinois federal district court for admitted breaches of the 2015 Agreement. JRE Field Services and Ascension Staffing obtained the monetary benefit of avoiding further litigation costs, attorney's fees, and the risk of a greater judgment being rendered after a trial on the merits. In return, Plant-N-Power received the agreed-upon settlement price and promise by JRE Field Services and Ascension Staffing to refrain from boiler field services work with certain Plant-N-Power customers in certain geographic areas.

### *Contract Preparation, Review, and Approval*

The record shows that the contract was prepared, reviewed, and approved by the attorneys for JRE Field Services, Ascension Staffing, and Plant-N-Power. All parties were represented by counsel when the Settlement Agreement was drafted and

remain represented by those same law firms in the instant matter. Further, Section 8(b) of the Settlement Agreement provides:

> The drafting and negotiation of this Agreement has been undertaken by all Parties hereto and their respective counsel. For all purposes, this Agreement shall be deemed to have been drafted jointly by all of the Parties hereto with no presumption in favor of one party over another in the event of any ambiguity.

### *Consent*

The record shows that JRE Field Services, Ascension Staffing, and Plant-N-Power consented to the non-competition covenant and were equally bound to the terms therein. Section 8(a) of the Settlement Agreement provides:

> This Agreement is entered into and executed voluntarily by each of the Parties hereto and without any duress or undue influence on the part of, or on behalf of, any Party.

### *Conclusion*

Based on the foregoing, we find that the trial court did not err in granting partial summary judgment in favor of Plant-N-Power, finding that La. R.S. 23:921 does not apply to the Settlement Agreement as to JRE Field Services and Ascension Staffing pursuant to **Louisiana Smoked Products, Inc.**

## Assignment of Error No. 2

In its cross motion for summary judgment, Plant-N-Power argued that it is not prohibited by La. R.S. 23:921(H) from seeking liquidated damages under the Settlement Agreement. The trial court agreed, granting partial summary judgment in favor of Plant-N-Power and against Defendants finding that La. R.S. 23:921(H) is not applicable to damages for any alleged breaches of the Settlement Agreement.

In their second assignment of error, Defendants argue the trial court erred as a matter of law when it determined that the liquidated damages provision in the Settlement Agreement was enforceable, citing La. R.S. 23:921(H).

### *Mr. Simoneaux*

Louisiana Revised Statutes 23:921(H) provides, in pertinent part:

21

> Any agreement covered by Subsection B, C, E, F, G, J, K, or L of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived.

As stated in our discussion of Defendants' first assignment of error, as to Mr. Simoneaux, the non-competition covenant contained in the parties' Settlement Agreement is not valid and enforceable as one of the exceptions to La. R.S. 23:921(A)(1)'s prohibition on non-competition agreements; therefore, the non-competition covenant is not an agreement covered by Subsections B, C, E, F, G, J, K, or L of La. R.S. 23:921. Because La. R.S. 23:921(H) is applicable only in agreements covered by Subsections B, C, E, F, G, J, K, or L, it follows that La. R.S. 23:921(H) is not applicable to damages for any alleged breaches by Mr. Simoneaux of the non-competition covenant contained in the parties' Settlement Agreement.

Further, because the non-competition covenant contained in Section 5(b) of the parties' Settlement Agreement is not valid and enforceable as one of the exceptions to La. R.S. 23:921(A)(1)'s prohibition on non-competition agreements, Section 5(b) is null and void. It follows that Plant-N-Power cannot seek liquidated damages from Mr. Simoneaux for an alleged violation of a null and void non-competition covenant contained in the parties' Settlement Agreement.

### *JRE Field Services and Ascension Staffing*

As stated in our discussion of Defendants' first assignment of error, as to JRE Field Services and Ascension Staffing, the non-competition covenant contained in Section 5(b) of the parties' Settlement Agreement is not governed by La. R.S. 23:921 because it is a non-competition agreement made "between two corporations on equal footing" under the Supreme Court's analysis in **Louisiana Smoked Products, Inc.** Therefore, La. R.S. 23:921(H) is not applicable to damages for any alleged breaches by JRE Field Services and Ascension Staffing of the non-competition covenant contained in Section 5(b) of the parties' Settlement Agreement.

Section 5(e) of the parties' Settlement Agreement provides, in pertinent part:

22

[T]he Simoneaux Parties agree to pay the [Plant-N-Power] Parties...liquidated damages in an amount not less than **Fifty Thousand and 0/100 Dollars ($50,000)** per violation of the covenants contained in <u>Section 5</u>, which amount shall not limit the [Plant-N-Power] Parties...from recovering any additional damages to which it is entitled. The Simoneaux Parties stipulate and agree that the above liquidated damages are a reasonable estimate of actual damages and that such liquidated damages are not in any way punitive or an unlawful penalty. [Emphasis in original.]

Based on Section 5(e), Plant-N-Power may seek liquidated damages against JRE Field Services and Ascension Staffing for any alleged breaches of the non-competition covenant.

## *Conclusion*

For these reasons, we find that the trial court did not err in granting partial summary judgment in favor of Plant-N-Power and against Defendants finding that La. R.S. 23:921(H) is not applicable to damages for any alleged breaches of the non-competition covenant contained in the parties' Settlement Agreement.

## Assignment of Error No. 3

In their third and final assignment of error, Defendants argue the trial court erred as a matter of law in holding that JRE Industrial was a party to the Settlement Agreement. Plant-N-Power argued in its cross motion for partial summary judgment that JRE Industrial is a party to the Settlement Agreement. The Settlement Agreement applied to the "Simoneaux Parties," defined as "any other person in which JRE Field Services, [Mr.] Simoneaux, or Ascension [Staffing] has a direct or indirect interest." Mr. Simoneaux owned 49% of JRE Industrial, meaning he has a direct interest in JRE Industrial. Plant-N-Power argued that JRE Industrial is included in the definition of "Simoneaux Parties," and is therefore a party to and bound by the terms of the Settlement Agreement. The trial court agreed, granting partial summary judgment in favor of Plant-N-Power and against Defendants finding that JRE Industrial was a party to the Settlement Agreement. The trial court reasoned that when Mr. Simoneaux signed the Settlement Agreement, he signed it on behalf

23

of himself "and on behalf of any other person in which he has a direct or indirect interest." The trial court held that "JRE Industrial is a party to the Settlement Agreement because [Mr.] Simoneaux has a direct interest in JRE Industrial," and noted that if Mr. Simoneaux "did not intend to bind JRE Industrial[,] he should have omitted the language regarding other persons in which [Mr.] Simoneaux has a direct or indirect interest."

As discussed by this Court in **Harris v. Union National Fire Ins. Co.,** 2019-0443 (La. App. 1ˢᵗ Cir. 1/15/20), 311 So.3d 1130, 1136-37, writ denied, 2020-00396 (La. 6/3/20), 296 So.3d 1067:

> A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. Civ. Code art. 3071. An enforceable compromise agreement has two essential elements: (1) mutual intention of preventing or putting an end to the litigation and (2) reciprocal concessions of the parties to adjust their differences. **Trahan v. Coca Cola Bottling Co. United, Inc.,** 2004-0100 (La. 3/2/05), 894 So.2d 1096, 1104. A valid and enforceable settlement may also be a compromise if it is reduced to writing. Louisiana courts have held that **"settlement" must be equated with compromise in connection with the rules governing compromise.** See La. Civ. Code art. 3071, 2007 Revision Comment (c).
>
> A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings. La. Civ. Code art. 3072. ... The purpose of the writing requirement is to serve as proof of the agreement and the acquiescence therein. **Sullivan v. Sullivan,** 95-2122 (La. 4/8/96), 671 So.2d 315, 317; **Sims,** 68 So.3d at 574. ... Further, the requirement that the agreement be reduced to writing necessarily implies that the agreement be evidenced by **documentation signed by both parties. Brasseaux v. Allstate Ins. Co.,** 97-0526 (La. App. 1 Cir. 4/8/98), 710 So.2d 826, 829. [Emphasis added.]

There is no dispute that the parties' Settlement Agreement is a compromise governed by La. C.C. art. 3071 to settle the parties' federal litigation in Illinois and in Louisiana state court regarding Mr. Simoneaux's violations of the non-compete, non-disclosure, non-solicitation, and non-disparagement provisions of the 2015

24

Agreement. As such, the settlement was reduced to writing, which is evidenced by the Settlement Agreement signed by the parties in March 2020. La. C.C. art. 3072. The parties to the Settlement Agreement are:

- Plant-N-Power ("together with any other direct or indirect subsidiary, affiliate[,] and parent company, collectively referred to as the "PNP Parties");" and

- JRE Field Services, Ascension Staffing, and Mr. Simoneaux

    (Mr. Simoneaux, JRE Field Services, Ascension Staffing, and "any other person in which JRE Field Services, [Mr.] Simoneaux[,] or Ascension [Staffing] has a direct or indirect interest, [are] collectively referred to as [the] "Simoneaux Parties")".

The Settlement Agreement was signed by Plant-N-Power through its Chairman and CEO, Jim W. Rogers. Mr. Simoneaux signed the Settlement Agreement "on behalf of himself and on behalf of any other person in which he has a direct or indirect interest." The Settlement Agreement was signed by JRE Field Services by its manager, Rebecca Evans Mouk. The Settlement Agreement was signed by Ascension Staffing by its manager, Mr. Simoneaux. There is no dispute that JRE Industrial was not listed as a party to the Settlement Agreement, nor did a registered agent, officer, manager, or member of JRE Industrial sign the Settlement Agreement on behalf of JRE Industrial. As provided for in Section 8(b), there is no evidence that counsel for JRE Industrial participated in the preparation, negotiation, drafting, review, and approval of the Settlement Agreement. Furthermore, there is no evidence that JRE Industrial, through a registered agent, officer, manager, or member consented to the Settlement Agreement.

Section 1 of the Settlement Agreement, titled "Settlement Payment," states, "The **Simoneaux Parties**, *in solido*, agree to pay [Plant-N-Power] the total of [$1.25 million] ("Settlement Payment")." Section 1(a) states, "the **Simoneaux Parties** will execute a promissory note…that provides the **Simoneaux Parties** are liable *in solido*

25

to [Plant-N-Power] in the principal amount of [$1.25 million]." (Emphasis added). The record shows that the promissory note was signed on March 19, 2020. The promissory note identifies its makers as Mr. Simoneaux, JRE Field Services, and Ascension Staffing and was executed by Mr. Simoneaux, JRE Field Services, and Ascension Staffing.

Section 1(f) of the Settlement Agreement sets forth that on the effective date of the agreement, "the **Simoneaux Parties** shall deliver to [Plant-N-Power's] counsel ... a consent judgment." (Emphasis added). The record shows that Mr. Simoneaux, JRE Field Services, and Ascension Staffing prepared a consent judgment in accordance with Section 1(f). The judgment was signed by Mr. Simoneaux, JRE Field Services, and Ascension Staffing on March 19, 2020.

Our *de novo* review of the record further shows that in response to and for the purpose of funding the $1.25 million settlement to Plant-N-Power provided for in Section 1 of the Settlement Agreement, Mr. Simoneaux formed JRE Industrial with John Evans and Rebecca Evans Mouk. Mr. Simoneaux registered JRE Industrial as a Louisiana limited liability company on February 26, 2020, approximately one month prior to the execution of the Settlement Agreement on March 23, 2020. There is no dispute that Mr. Simoneaux owned 49% of JRE Industrial and had a direct interest in JRE Industrial.

A compromise made by one of multiple persons with an interest in the same matter is not binding for the others. See La. C.C. art. 3075; **Meadows v. Adams**, 2018-1544 (La. App. 1st Cir. 11/9/20), 316 So.3d 5, 13. Furthermore, it is well settled that only a party to a contract can be bound by its provisions. **O'Hara v. Globus Medical, Inc.**, 2014-1436 (La. App. 1st Cir. 8/12/15), 181 So.3d 69, 79, writ denied, 2015-1944 (La. 11/30/15), 182 So.3d 939. A limited liability company is a juridical person to which the law attributes personality; however, the personality of a juridical person is distinct from that of its members. La. C.C. art. 24; La. R.S. 12:1301; **Ogea v. Merritt**, 2013-1085 (La. 12/10/13), 130 So.3d 888, 894-95.

Plant-N-Power's argument that any entity in which Mr. Simoneaux has a direct or indirect interest automatically becomes a party to the Settlement Agreement would lead to absurd consequences. There is no record evidence showing that JRE Industrial is a party to the Settlement Agreement by virtue of Mr. Simoneaux's direct interest in JRE Industrial, nor by JRE Industrial's alleged classification as one of the "Simoneaux Parties" under the Settlement Agreement. If JRE Industrial was one of the "Simoneaux Parties," it follows that JRE Industrial should have executed the promissory note and the consent judgment, as was required by the "Simoneaux Parties" under the Settlement Agreement. However, the evidence shows that JRE Industrial did not execute the promissory note, nor the consent judgment.

For all these reasons, we find that the trial court erred in granting partial summary judgment in favor of Plant-N-Power and against Defendants finding that JRE Industrial was a party to the Settlement Agreement.

## DECREE

We reverse the portion of the trial court's June 6, 2022 amended judgment that granted partial summary judgment in favor of Plant-N-Power Services, Inc. and against Defendants finding that La. R.S. 23:921 does not apply to the Settlement Agreement as to Tex David Simoneaux, Jr.

We affirm the portion of the trial court's June 6, 2022 amended judgment that granted partial summary judgment in favor of Plant-N-Power Services, Inc. and against Defendants finding that La. R.S. 23:921 does not apply to the Settlement Agreement as to JRE Field Services, LLC and Ascension Staffing, LLC.

We affirm the portion of the trial court's June 6, 2022 amended judgment that granted partial summary judgment in favor of Plant-N-Power Services, Inc. and against Defendants finding that La. R.S. 23:921(H) is not applicable to damages for any alleged breaches by Defendants of the non-competition covenant contained in the parties' Settlement Agreement.

27

We reverse the portion of the trial court's June 6, 2022 amended judgment that granted partial summary judgment in favor of Plant-N-Power Services, Inc. and against Defendants, finding that JRE Industrial Services, LLC was a party to the Settlement Agreement.

We assess appellate court costs equally among the parties. We remand this matter to the trial court for further proceedings consistent with this opinion.

**APPEAL MAINTAINED; JUDGMENT AFFIRMED IN PART; REVERSED IN PART; REMANDED.**